# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ESTATE OF RENARDO GREEN | : | |
| c/o Co-Personal Representatives | | |
| Brittany R. Green, Tiffany R. Green, Jayda A. | : | |
| Green, Phyllis McGowan, and Tracy L. | | |
| Naylor | : | |
| Anne Arundel County, MD | | |
| | : | |
| and | | |
| | : | |
| BRITTANY R. GREEN | | |
| 17 Monument Street | : | CIVIL ACTION NO. _____ |
| Annapolis, MD 21401 | | |
| | : | |
| and | | |
| | : | |
| TIFFANY R. GREEN | | |
| 1145 Madison Street, Apt S-3 | : | |
| Annapolis, MD 21403 | | |
| | : | |
| and | | |
| | : | |
| JAYDA A. GREEN | | |
| 6419 Washington Square | : | |
| Glen Burnie, MD 21061 | | |
| | : | |
| and | | |
| | : | |
| PHYLLIS MCGOWAN | | |
| 920 President Street, Apt A3 | : | |
| Annapolis, MD 21403 | | |
| | : | |
| and | | |
| | : | |
| TRACY L. NAYLOR | | |
| 1145 East Madison Street, Apt. A1 | : | |
| Annapolis, MD 21043, | | |
| | : | |
| Plaintiffs, | | |
| | : | |
| v. | | |

CITY OF ANNAPOLIS (MD)                     :
City of Annapolis Office of Law
D. Michael Lyles, Esquire, City Attorney   :
160 Duke of Gloucester Street
Annapolis, MD 21401                        :
Anne Arundel County

                                           :
        and
                                           :

SERGEANT MARK COCHRAN
*Individually and in his official capacity*   :
Badge #3537
c/o Annapolis Police Department            :
199 Taylor Avenue
Annapolis, MD 21401-3496                   :
Anne Arundel County

                                           :
        and
                                           :

OFFICER MATTHEW BODMER
*Individually and in his official capacity*   :
Badge Number Unknown
c/o Annapolis Police Department            :
199 Taylor Avenue
Annapolis, MD 21401-3496                   :
Anne Arundel County

                                           :
        and
                                           :

OFFICER ANNA WOYTKO
*Individually and in her official capacity*   :
Badge #6343
c/o Annapolis Police Department            :
199 Taylor Avenue
Annapolis, MD 21401-3496                   :
Anne Arundel County

                                           :
        and
                                           :

OFFICER IVAN SIMINYUK
*Individually and in his official capacity*   :
Badge Number Unknown
c/o Annapolis Police Department            :
199 Taylor Avenue

Annapolis, MD 21401-3496            :
Anne Arundel County
                                    :
        and
                                    :
JOHN DOES 1-5
c/o Annapolis Fire Department       :
Fire Headquarters
1790 Forest Drive                   :
Annapolis, MD 21401
Anne Arundel County,                :

        Defendants.                 :

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Estate of Renardo Green (c/o co-personal representatives Brittany R. Green, Tiffany R. Green, Jayda A. Green, Phyllis McGowan, and Tracy L. Naylor), and Brittany R. Green, Tiffany R. Green, Jayda A. Green, Phyllis McGowan, and Tracy L. Naylor, individually (all hereinafter collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby sue the City of Annapolis, Sergeant Mark Cochran (in his official and personal capacities), Officer Matthew Bodmer (in his official and personal capacities), Officer Anna Woytko (in her official and personal capacities), Officer Ivan Siminyuk (in his official and personal capacities), and John Does 1–5 (in their official and personal capacities) (all hereinafter collectively, "Defendants"). In support of their causes of action, Plaintiffs state as follows:

## INTRODUCTION

1.      This case concerns the foreseeable and deadly consequences of an unconstitutional, widely condemned, yet stubbornly persistent practice: prolonged face-down restraint of men and women in custody by police and emergency responders.

2.     On June 1, 2021, Annapolis Police Department officers and Annapolis Fire Department emergency responders restrained Renardo Green, a helpless, mentally disturbed man, in "protective custody" and then strapped him on a stretcher <u>face-down</u>—negligently, grossly negligently, with deliberate indifference, and with fatal consequences, in violation of Renardo Green's constitutional rights.

3.     The link between face-down restraint and sudden death has been nationally known since, at the latest, a 1995 U.S. Department of Justice bulletin that alerted law enforcement to the dangers of this practice.[1]

4.     At the time of Mr. Green's face-down restraint and resulting death, the Maryland Medical Protocols for Emergency Medical Services, promulgated by the Maryland Institute for Emergency Medical Services Systems (hereinafter "MIEMSS Protocols") directed (and still direct) EMS responders, in all caps, as follows:

> **"PATIENTS ARE NOT TO BE RESTRAINED IN A FACE-DOWN, HOBBLED, OR HOG-TIED POSITION.[2]"**
>
> **"IF POLICE HANDCUFFED THE PATIENT, JOINTLY WITH POLICE, REPOSITION THE PATIENT IN FACE-UP POSITION WITH HANDS ANTERIOR AND SECURED TO STRETCHER.[3]"**

5.     Defendants completely ignored these clear directives.

6.     At the time Mr. Green was killed, the City of Annapolis had no policy that prohibited face-down restraint or warned officers, paramedics, or first responders that face-down

---

[1] *See* U.S. Department of Justice, Positional Asphyxia—Sudden Death (June 1995), *available at*  https://www.ojp.gov/pdffiles/posasph.pdf.

[2] The Maryland Medical Protocols for Emergency Medical Services (2020) at 322, *available at* https://www.miemss.org/home/Portals/0/Docs/Guidelines_Protocols/MD-Medical-Protocols-2020-20200610.pdf?ver=2020-06-12-120333-457.

[3] *Id*.

restraint was dangerous—notwithstanding well-publicized incidents of in-custody deaths from face-down restraint (such as the murder of George Floyd), and the aforementioned prohibition in the MIEMSS Protocols on face-down restraint due to its risk of serious injury and death. (*See* paragraphs 4–5, *supra*.)

7.      It was only after this incident that the Annapolis Police Department promulgated a revised use of force policy prohibiting the unconstitutional practice of face-down restraint. Unlike other police departments, at the time Mr. Green was killed, the Annapolis Police Department unconstitutionally condoned face-down restraint as a matter of custom and policy.[4]

8.      The Annapolis Police Department's revised policy, promulgated in June 2022, reads, "Members shall not position a restrained person face-down as it may cause positional asphyxia. In addition, placing persons on their back can cause radial nerve damage to the wrist and forearm area. Restrained persons are to be seated or placed on their side."[5]

9.      This language mirrors language in the current version of the Baltimore City Police Department's Use of Force Policy (Policy 1115). The Baltimore City Police Department promulgated the current version of the policy well over a year before Mr. Green was killed, on November 24, 2019.[6]

10.      Before this incident, Annapolis Fire Department policies did not (and have never) contained language similar to that now (belatedly) found in the Police Department's use of force

---

[4] *See* Use of Force Policy (March 2021), *available at* https://web.archive.org/web/20211210044717/https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF. This outdated version of the policy is still available on the City's website. *See* https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF.

[5] *See* https://www.annapolis.gov/DocumentCenter/View/22007/C-03-Use-Of-Force-June-2022-PDF.

[6] *See* https://www.marylandattorneygeneral.gov/Pages/IID/Reports/111822_IID_Report.pdf (page 85 of 95 of pdf file); https://public.powerdms.com/BALTIMOREMD/documents/51042.

policy. Unlike other fire departments, at the time Mr. Green was killed, the Annapolis Fire Department unconstitutionally condoned face-down restraint as a matter of custom and policy.

11.     The Annapolis Fire Department did not train its personnel to avoid face-down restraint or promulgate a policy prohibiting face-down restraint until November 1, 2022. This policy (Policy 7.23, "Patient Care") still does not mention face-down restraint, but simply requires paramedics to follow the MIEMSS Protocols.[7]

12.     Defendants' unconstitutional disregard of the MIEMSS Protocols, and the City of Annapolis's tolerance of face-down restraint and failure to promulgate and enforce appropriate policies and procedures prohibiting face-down restraint, caused Renardo Green to suffer cardiopulmonary arrest on June 1, 2021 as a result of being restrained in a face-down position, leading to his eventual death on June 4, 2021.

13.     The Maryland Medical Examiner determined Mr. Green's death was a homicide caused by "prone restraint cardiac arrest."

## JURISDICTION AND VENUE

14.     This action is brought under the Constitution of the United States, the Maryland Declaration of Rights, and Maryland tort law.

15.     This case arises from the wrongful death by homicide of Renardo Green (hereinafter "Mr. Green") on June 4, 2021. Mr. Green's death was a direct result of the unlawful acts and mistreatment perpetrated against him by Defendants on June 1, 2021.

16.     The unlawful practices complained of below constituted excessive force under the 4th Amendment to the United States Constitution. These practices also constituted deliberate

---

[7] *See* Policy 7.23, Patient Care, *available at* https://www.annapolis.gov/DocumentCenter/View/16634/723-Patient-Care-Response-and-Transportation-PDF.

indifference to Mr. Green's constitutional rights to bodily integrity and his serious medical needs in violation of Mr. Green's right to life and liberty under the substantive due process component of the Fourteenth Amendment to the United States Constitution. They amounted to a state-created danger that killed Mr. Green.

17.     The effect of the practices complained of below was to deprive Mr. Green of his civil rights, which ultimately and foreseeably killed him.

18.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1367.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

20.     Although not required, on April 19, 2022, a certified letter giving notice of Plaintiffs' claims was sent to the Annapolis City Attorney, D. Michael Lyles, pursuant to the Local Government Tort Claims Act (Md. Code. Ann., Cts. & Jud. Proc. §§ 5-301 *et. seq.*).

## PARTIES

21.     Plaintiffs Brittany R. Green, Tiffany R. Green, Jayda A. Green, and Phyllis McGowan are citizens of the State of Maryland and are domiciled in Anne Arundel County. These Plaintiffs are Renardo Green's children.

22.     Plaintiff Tracy L. Naylor (hereinafter "Plaintiff Naylor") is a citizen of the State of Maryland and is domiciled in Anne Arundel County. Plaintiff Naylor was married to Renardo Green from 2009 until his untimely death by homicide on June 1, 2021 while in the custody of the Annapolis Police Department and Annapolis Fire Department.

23.     Plaintiffs Brittany R. Green, Tiffany R. Green, Jayda A. Green, Phyllis McGowan, and Tracy L. Naylor are hereinafter referred to in this Complaint collectively as the "Individual Plaintiffs".

24.    Plaintiff Estate of Renardo Green has been duly established in Anne Arundel County under the laws of the State of Maryland, with the Individual Plaintiffs as Co-Personal Representatives of the Estate.

25.    Defendant City of Annapolis (hereinafter "City") is a municipality duly incorporated under the laws of the State of Maryland, with its leadership functions under the control and management of the Mayor and Council of the City of Annapolis.

26.    At all relevant times, Defendant City has maintained and controlled the City of Annapolis Police Department as a duly constituted police agency headquartered at 199 Taylor Avenue, Annapolis MD 21401, with powers granted pursuant to the laws of the State of Maryland, the City of Annapolis, and other applicable federal, state, and local laws.

27.    The City of Annapolis Police Department (hereinafter "Annapolis Police Department" or "APD"), through its command structure, was and is responsible for establishing customs, policies and standing orders controlling the actions of its police officers—including Defendants Sergeant Mark Cochran, Officer Matthew Bodmer, Officer Ivan Siminyuk, and Officer Anna Woytko (hereinafter collectively "Officer Defendants"). The APD is also responsible for providing for their training and supervision regarding the appropriate use of force and restraints and the appropriate treatment of individuals taken into protective custody.

28.    At all relevant times, Defendant City employed Officer Defendants as duly authorized law enforcement officers in the Annapolis Police Department, who all acted at all relevant times within the course and scope of their employment and under color of state law.

29.    At all relevant times, Defendant City has maintained and controlled the Annapolis Fire Department (hereinafter "Annapolis Fire Department" or "AFD") as a duly constituted fire department headquartered at 1790 Forest Drive, Annapolis MD 21401, with power granted

pursuant to the laws of the State of Maryland, the City of Annapolis, and other applicable federal, state, and local laws.

30.     At all relevant times, AFD included an Emergency Medical Services (hereinafter "EMS") Division, with the self-described purpose "to provide emergency and non-emergent health care, rescue and related services to the citizens and visitors of the City of Annapolis."[8]

31.     At all relevant times, Defendant City employed paramedics, emergency responders, and other health care workers within AFD's EMS Division, including Defendants John Doe 1–5 (hereinafter "Doe Defendants"), to carry out its mission of providing health care, rescue, and related services to the people of Annapolis.

32.     AFD was and is responsible for establishing customs and policies controlling the actions of its personnel, including John Does 1–5, as well as providing for their training and supervision regarding the appropriate care and treatment of individuals and patients in its custody or care.

33.     At all relevant times, Doe Defendants were paramedics or other health care-related personnel employed by the City of Annapolis, acting within the course and scope of their employment. They are hereinafter sometimes referred to as "paramedics" or "emergency responders."

34.     On June 1, 2021, Doe Defendants responded to Plaintiff Naylor's 911 call to Mr. Green's address and took Mr. Green into custody for purposes of providing care and transport. The aforementioned Doe Defendants have not yet been identified, despite Plaintiffs' repeated efforts to do so through requests under the Maryland Public Information Act. When Doe Defendants true

---

[8] *See* Emergency Medical Services, *Annapolis.gov*, https://www.annapolis.gov/355/Emergency-Medical-Services (last visited Jan. 24, 2022).

names and capacities are ascertained through discovery, Plaintiffs will amend this Complaint. Plaintiffs are informed and believe and therefore allege that each of these Doe Defendants were acting within the course and scope of their employment with the City and under color of state law when they mistreated Mr. Green in a manner that caused his death.

35. At all relevant times, a health care provider-patient relationship existed between Mr. Green, Doe Defendants, and Defendant City, including, but not limited to, the AFD, and other agents, ostensible agents, servants, and employees of the Defendants.

36. At all relevant times, each and every Defendant acted under color of state law.

## FACTUAL CLAIMS

37. Plaintiffs incorporate paragraphs 1–36 above as if fully set forth herein.

38. On June 1, 2021, Plaintiff Naylor called 911 and requested that they respond to her and Mr. Green's residence out of concern for his safety.

39. At the time, Mr. Green, a 51-year-old African American man, was suffering from a disturbed and impaired mental state. He was bleeding profusely from self-inflicted lacerations caused by broken glass and ceramics.

40. At no time was Mr. Green violent or threatening toward Plaintiff Naylor or any other individual.

41. Officers Woytko, Bodmer, and Siminyuk each wrote an account of what occurred on June 1, 2021. Officer Woytko's report is dated June 1, 2021; Officer Bodmer's is dated June 3, 2021; and Officer Siminyuk's is dated June 3, 2021.

42. The officers' reports all indicate that the encounter with Mr. Green was recorded by body-worn camera.[9]

---

[9] Defendant City has refused to disclose the body-worn camera footage pertaining to this incident to Plaintiffs. In response to Plaintiffs' valid Public Information Act Request, Defendant City justified its refusal by stating that, "it

43.     Officer Woytko's report indicates that on June 1, 2021, at approximately 2:15 AM, she responded to Plaintiff Naylor's 911 call for assistance due to Mr. Green's erratic behavior. She reported that upon her arrival, Plaintiff Naylor's brother was holding Mr. Green down on the ground. She also noted "blood on the counter tops, floor, walls, cabinets and on the clothing of" Mr. Green and that Mr. Green "was actively bleeding from his right hand at the time."

44.     Officer Bodmer's report notes that he responded to the scene with Officer Woytko. He also documented radioing for Officer Siminyuk because he anticipated needing assistance putting Mr. Green into protective custody.

45.     Officer Woytko noted Mr. Green was "unaware of his own emotions, bodily movements, and was posing a great danger to himself and others with his behavior." She noted that "[a]t this time, Officer Bodmer, Officer Siminyuk, and I placed the male subject into protective custody for an emergency evaluation."

46.     The officers reportedly subdued Mr. Green by holding his ankles down and using two sets of handcuffs to place his hands behind his back.

47.     Officer Woytko documented that Green "was then placed on his side in handcuffs on the floor of the kitchen until AFD arrived."

---

would interfere with a valid and proper law enforcement proceeding, and further prejudice an investigation." While denying disclosure to Plaintiffs on putative public policy grounds, Defendant City has shown the footage privately to the media and members of city government in an apparent effort to portray itself in a favorable light. *See, e.g.*, Alex Mann and Lilly Price, Death of Annapolis man who suffered cardiac arrest in custody of city fire, police is ruled homicide by medical examiner, *Capital Gazette* (Dec. 17, 2021), https://tinyurl.com/4u6rvs42.

48.    Officer Bodmer wrote in a supplemental narrative, "Off. Siminyuk and I then rolled Mr. Green onto his side so that the left side of his body was pointing to the ceiling. We rolled Mr. Green onto his side so that we could keep his airway open." (Emphasis added.)

49.    At an unknown time thereafter, Officer Defendants and/or Doe Defendants rolled Mr. Green into a face-down (prone) position.

50.    Per Officer Woytko, AFD personnel arrived "moments later" and attended to Mr. Green's injured hand.

51.    Sergeant Cochran, whom Officer Siminyuk identified as the shift supervisor, then arrived with shackles to restrain Mr. Green's legs.

52.    Upon being handcuffed, shackled, or otherwise restrained by Officer and/or Doe Defendants, Mr. Green was in custody and was unable to move freely (including being unable to roll out of a face-down position) or otherwise ensure his own safety. By placing Mr. Green in their "protective custody" without his consent, Doe & Officer Defendants and Defendant City all undertook duties toward and entered a special relationship with Mr. Green by limiting his freedom to act on his own behalf, whereby they assumed an affirmative duty to protect his safety and general well-being as he was wholly dependent on the City and its agents to provide him services and care at all times relevant to this Complaint.

53.    Officer Woytko spoke with Plaintiff Naylor regarding Mr. Green. She reported that Plaintiff Naylor said that Mr. Green had been "acting erratically (yelling and banging his hand on the walls/other objects)." Officer Woytko reported that Plaintiff Naylor requested Mr. Green be kept at a hospital for at least 72 hours.

54.    Officer Siminyuk documented that "Mr. Green was acting very irrational by repeatedly yelling same phrases and uncontrollably kicking and swinging his arms around." *[sic]*.

Per Officer Siminyuk, "[w]hile I was trying to communicate with Mr. Green, he would not provide me with any verbal response. Mr. Green would not say anything else but, 'Yeah bitch!'"

55.     Officer Siminyuk also stated, "[D]uring the entire process, Mr. Green was informed numerous times that he was not in trouble and that Officer Bodmer, Officer Woytko and I were only trying to help him."

56.     Officer Woytko reported the following when she finished speaking to Plaintiff Naylor:

> I turned around and observed AFD medics were moving the male subject onto a stretcher, using a sheet, to be taken out of the residence. The male subject was laying on his stomach on the floor of the kitchen still handcuffed behind the back. The male subject was then taken out of the residence by AFD. He was strapped down on a stretcher on his stomach, and handcuffed behind the back.

(Emphasis added.)

57.     Officer Bodmer also documented Mr. Green being strapped face-down on the stretcher:

> At approximately 0234 hours, at the direction of AFD, I assisted them with putting a white sheet under Mr. Green' stomach so that we could lift him and put him onto a portable stretcher. . . . At 0236 hours I along with members of AFD picked Mr. Green up using the white sheet and carried him over to where there was a stretcher in the living room. Mr. Green was lying on his stomach on the stretcher and still yelling "yeah bitch." AFD then took control of Mr. Green, strapping him into the portable stretcher so he did not fall off of it.

(Emphasis added.)

58.     Thus, per Officer Bodmer's and Officer Woytko's accounts, Mr. Green was restrained in a face-down position by 2:34 AM at the latest, before being strapped face-down to the stretcher.

59.     Per Officer Bodmer's account, at approximately 2:37 AM, "AFD began to transport Mr. Green out of the apartment and out of the building. I advised Off. Woytko that I would ride with AFD. At approximately 0238 hours Off. Woytko advised that she was putting Mr. Green under an emergency petition."

60.     Per Officer Siminyuk's report, Officer Siminyuk cleared the scene at approximately 2:38 AM.

61.     Officer Bodmer continued to assist Mr. Green's transport in the face-down position. After his exchange with Officer Woytko, he noted, "I then stood by while AFD loaded Mr. Green onto a rolling stretcher that was just outside of the building. I then handed one of the paramedics one of the straps for the stretcher and they buckled it and I stepped away from the stretcher."

62.     Officer Bodmer observed that "[a]t approximately 0240 hours Mr. Green was still yelling and was lifting his chest off of the stretcher while AFD was wheeling him around to the back of the ambulance." (emphasis added).

63.     At 2:41 AM, Officer Bodmer reported that Mr. Green was loaded into the ambulance. He reported that at this time "Mr. Green was no longer yelling and one of the paramedics asked Mr. Green to turn his head to the side." Mr. Green did not respond, so the paramedic turned his head.

64.     At 2:42 AM, "one of the paramedics advised [Bodmer] that Mr. Green's nose was clear and his airway was open."

65.     At 2:43 AM, Officer Bodmer reported that he "opened the rear door to the ambulance. Sgt. Cochran asked me if I was good and I told him yes."

66.     At 2:44 AM, AFD personnel asked Officer Bodmer for another set of handcuffs and Sergeant Cochran provided them.

67.     At 2:45 AM, per Officer Bodmer, "AFD repositioned Mr. Green onto his back." Multiple sets of handcuffs were reportedly detached and reattached, with the end result that Mr. Green was laid on his back with handcuffs attached to the stretcher.

68.     Per Officer Bodmer, "[a]t approximately 0248 hours members of AFD began administering CPR to Mr. Green. Mr. Green was transported to AAMC where AAMC medical staff continued rendering medical aid." Officer Bodmer's report ends there.

69.     Officer Woytko reported she went to her police vehicle to follow the ambulance transporting Mr. Green to Anne Arundel Medical Center. She reported that Sergeant Cochran told her to obtain written statements from witnesses inside the house and to preserve the scene for detectives. Officer Woytko took statements from Plaintiff Naylor and her brother, who resided at the home. A detective and crime scene photographer also arrived moments later.

70.     Officer Woytko eventually cleared the scene "and met Officer Bodmer at AAMC and completed an emergency evaluation for the male subject. AAMC took custody of the male subject. Mobile Crisis was notified of the emergency evaluation."

71.     None of these reports ever mentioned Mr. Green's cardiac arrest or injuries, apart from the injury to his hand and administration of CPR.

72.     Mr. Green had to be resuscitated several times at AAMC. He never regained consciousness.

73.     Plaintiff Naylor learned at approximately 8:00 AM on June 1, 2021 that AAMC needed to intubate Mr. Green and that he had likely suffered brain death.

74.     Because Mr. Green suffered irreversible brain damage due to cardiopulmonary failure that rendered him clinically brain dead with no meaningful hope of recovery, his family chose to discontinue life support. Mr. Green died on June 4, 2021.

75.     Upon information and belief, including, but not limited to the fact that any reasonable police officer and emergency responder would have adhered to the abovementioned MIEMSS Protocols if they had been adequately trained and/or supervised on those protocols, Defendant City failed, with deliberate indifference to the rights of its citizens, including Mr. Green, to adequately train and supervise the Officer and Doe Defendants to not restrain persons who were experiencing a medical emergency face-down on their stomachs or face-up on their backs. Specifically, Defendant City failed to ensure and monitor that its emergency responders knew and understood this prohibition, committed it to memory, understood the medical and legal significance of this prohibition, and were able to effectively discern when and how to abide by the policy.

76.     Defendant City had actual or constructive knowledge, prior to June 1, 2021, that adequate training of its emergency responders on the constitutional parameters of restraining people experiencing medical emergencies was essential to avoid constitutional violations. Despite Defendant City's actual or constructive knowledge of the obvious necessity of the aforesaid training, Defendant City failed to adequately train Officer and Doe Defendants accordingly, and failed to do so with deliberate indifference to the rights of its citizens, including Mr. Green.

77.     Mr. Green's death was a direct and proximate result of the negligent, grossly negligent, reckless, deliberately indifferent, and unconstitutional conduct of Defendants and their agents. Neither Mr. Green nor Plaintiffs caused or contributed to this outcome.

78.     In a June 2021 statement, City Mayor Gavin Buckley said he got to know Mr. Green while he worked for the City and described him as having "a big heart and an infectious laugh."[10]

---

[10] Lilly Price, Annapolis man Renardo "Hot Dog" Green dies after suffering cardiac arrest on Memorial Day, *Capital Gazette* (June 14, 2021), https://www.capitalgazette.com/news/ac-cn-annapolis-man-dies-green-20210614-szguzhk6vnayjoszqwsoz3hfby-story.html.

79.     On September 20, 2021, the Maryland Office of the Chief Medical Examiner (hereinafter "Medical Examiner") reportedly ruled Mr. Green's death a homicide caused by "prone restraint cardiac arrest."[11]

80.     Defendant City was aware of the Medical Examiner's findings regarding the cause and mechanism of Mr. Green's death for at least one month before Defendant City disclosed the Medical Examiner's findings to the public or Mr. Green's family.[12]

81.     Despite the clear prohibition against face-down restraint in the MIEMSS Protocols, Defendant City's Mayor Gavin Buckley publicly described the circumstances of Mr. Green's homicide as "pretty textbook to me on how you handle someone humanely and sensitively."[13] The City, however, has never released body-worn camera footage of the incident.

82.     At all relevant times, Mr. Green, as a citizen of the United States and the State of Maryland, had clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 24 of the Maryland Declaration of Rights to be free from excessive force and from the deprivation of his life, liberty, or property, without due process of law, at the hands of state actors. He also had, at all relevant times, clearly established rights to personal security, liberty, dignity, and bodily integrity. These rights were clearly established prior to June 1, 2021, and any reasonable police officer and/or emergency responder knew or should

---

[11] Lilly Price, Annapolis authorities learned more than a month ago of homicide ruling for a man who died after being in police, fire custody, *Baltimore* Sun (Dec. 20, 2021), https://www.baltimoresun.com/maryland/anne-arundel/ac-cn-annapolis-custody-homicide-renardo-green-20211220-n65uuikkarhsde7l7lik2ral7i-story.html.

[12] *Id.*

[13] *See* Alex Mann and Lilly Price, Death of Annapolis man who suffered cardiac arrest in custody of city fire, police is ruled homicide by medical examiner, *Capital Gazette* (Dec. 17, 2021), https://www.capitalgazette.com/maryland/annapolis/ac-cn-annapolis-in-custody-death-20211217-u4mvbta7tndoppflpd3seyoxmm-story.html.

have known of these rights as of that date. No government interest or burden outweighed Mr. Green's aforementioned enumerated and/or clearly established rights.

83.     Under Maryland law, public entities, including Defendant City, are directed to pay any tort judgment for which their employees are liable within the scope of their employment.

84.     At all relevant times, the Officer and Doe Defendants were employees of Defendant City acting within the scope of their employment and in accordance with accepted custom and usage when they committed the misconduct described herein.

85.     Accordingly, Defendant City is required by State law to indemnify any and all of the individual Defendants against whom judgment is entered in this case.

86.     All claims and counts below are timely filed within three years after Mr. Green's death, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904(g). Although not required given the nature of this action, Defendant City received timely notice of this claim.

<u>**CLAIMS**</u>

<u>**COUNT I**</u>

**Deprivation of Constitutional Rights**
**42 U.S.C. § 1983 – Excessive Force & Violation of Right to Due Process & Bodily Integrity**
**Pursuant to U.S. Const. Amends. IV & XIV**

**Survival Action**
**(Plaintiff Estate of Renardo Green Against Doe & Officer Defendants)**

87.     Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

88.     At all relevant times, Mr. Green, a citizen of the United States and State of Maryland, had clearly established rights under the Fourth and Fourteenth Amendments to be free from excessive force and from the deprivation of his life, liberty, or property, without due process of law, at the hands of state actors. He also had, at all relevant times, clearly established rights to

personal security, liberty, dignity, and bodily integrity. These rights were clearly established prior to June 1, 2021, and any reasonable police officer and/or emergency responder knew or should have known of these rights as of that date.

89.   Section 1983 of Title 42, United States Code, protects individuals from violations of rights guaranteed by the United. States Constitution or laws of the United States that were committed by persons acting under color of state authority.

90.   Defendant City is a local municipality organized under the laws of the State of Maryland. At all relevant times, Doe & Officer Defendants were acting as servants, agents, ostensible agents, and/or employees of Defendant City and therefore were acting under color of state law.

91.   Doe & Officer Defendants unlawfully deprived Mr. Green of his rights to life, liberty, personal security, dignity, and bodily integrity, and the right to be free from physical abuse and excessive force at the hands of state actors, when they, *inter alia*, restrained Mr. Green in a face-down position to a stretcher, in contravention of clear and longstanding statewide policy described in the MIEMSS Protocols.

92.   Doe & Officer Defendants undertook these egregious acts and omissions despite actual or constructive knowledge that their acts and omissions would (and ultimately did) foreseeably create and/or increase the risk of harm to Mr. Green, thereby causing him serious injury and death.

93.   There was no legitimate governmental justification for Doe & Officer Defendants' conduct; rather, these Defendants' actions were intentional, willful, wanton, reckless, or deliberately indifferent, and constituted an abuse of official power.

94.     By placing Mr. Green in their "protective custody" without his consent, Doe &
Officer Defendants and Defendant City undertook duties toward and entered a special relationship
with Mr. Green by limiting his freedom to act on his own behalf, whereby they assumed an
affirmative duty to protect his safety and general well-being as he was wholly dependent on the
City and its agents to provide him services and care at all times relevant to this Complaint.

95.     Doe & Officer Defendants committed these actions with deliberate indifference to
Mr. Green's rights to due process of law, bodily integrity, and freedom from excessive force, and
did so with reckless disregard for his enumerated rights—by intentionally, wantonly, and willfully
increasing the danger to which Mr. Green was exposed.

96.     Doe & Officer Defendants knowingly and intentionally disregarded the real risk of
serious injury or death to Mr. Green and were recklessly, callously, and deliberately indifferent to
his constitutional rights. Doe & Officer Defendants had ample time to deliberate upon their choices
and yet acted with reckless disregard and deliberate indifference to Mr. Green's rights. Under these
circumstances, Doe & Officer Defendants' conduct was unconstitutionally arbitrary and further
shocks the conscience.

97.     There was no excuse, justification, or legitimate government purpose—
pedagogical, medical, or otherwise—for Doe & Officer Defendants' actions. Doe & Officer
Defendants acted willfully, recklessly, and with deliberate indifference.

98.     As described herein, Doe & Officer Defendants' actions were objectively
unreasonable and violated Mr. Green's rights to be free from excessive force, to due process of
law, and to bodily integrity, including his right to be free from physical abuse at the hands of state
actors and his rights to personal security, liberty, and dignity.

99.     Prior to June 1, 2021, Mr. Green's constitutional rights were clearly established, and any reasonable emergency responder or police officer knew or should have known of these rights; thus, Officer & Doe Defendants are not entitled to qualified immunity.

100.     Officer & Doe Defendants' violations of Mr. Green's constitutional rights directly and proximately caused him injuries including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, severe physical injury, and ultimately caused his wrongful death.

101.     As a result of his injuries, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, special, and punitive damages from Doe & Officer Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against Doe & Officer Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT II

**Deprivation of Constitutional Rights**
**42 U.S.C. § 1983 – Excessive Force & Violation of Right to Due Process & Bodily Integrity**
**Pursuant to U.S. Const. Amend. IV & XIV**

**Wrongful Death Action**
**(Individual Plaintiffs Against Doe & Officer Defendants)**

102.     Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

103.     Plaintiffs specifically incorporate by reference and adopt paragraphs 88 through 100 *supra* as if fully set forth herein.

104.    As a direct and proximate cause of Mr. Green's wrongful death, the Individual Plaintiffs have suffered and will continue to suffer injuries, including but not limited to emotional distress, pain and suffering, anxiety, and loss of companionship, comfort, protection, care, attention, support, services, advice, counsel, training, society and/or consortium.

105.    As such, the Individual Plaintiffs are entitled to compensatory, economic, consequential, special, and punitive damages from Doe & Officer Defendants.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against Doe & Officer Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT III

### Deprivation of Constitutional Rights (*Monell* Claim) –
### 42 U.S.C. § 1983 – Unconstitutional Policy or Custom/Failure to Train & Supervise

### Survival Action
### (Estate of Renardo Green Against Defendant City)

106.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

107.    Under the United States Constitution, Defendant City is obligated, among other things, to train and supervise its emergency responder employees, officers, agents, ostensible agents, and/or volunteers, in the constitutional parameters of restraining a subject who is experiencing a medical emergency to ensure that the constitutional rights of citizens are not violated.

108.    At all relevant times, Defendant City, directly and through its officers and agents, had an obligation to ensure that its emergency responder employees, police officers, agents, ostensible agents, and/or volunteers, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situations they would likely encounter in the performance of their conferred official duties with respect to the training, supervision, and oversight of all employees, agents, and officers under its direction and control.

109.    As identified *supra*, the training, supervision, and oversight required of Defendant City to ensure respect for the constitutional rights of a person who is restrained, was inadequate, insufficient, or nonexistent. As such, Defendant City, directly and through its employees, agents, officers, ostensible agents, and/or volunteers, failed to exercise the requisite degree of care in the training and supervision of Officer and Doe Defendants.

110.    At the time of the events giving rise to this action, Defendant City had one or more unconstitutional policies or customs that authorized or permitted face-down restraint of individuals in custody under the same or similar circumstances as Mr. Green.

111.    At the time of the events giving rise to this action, Defendant City had one or more unconstitutional policies or customs that authorized or permitted failing to train, re-train, and supervise its personnel, including APD officers and AFD paramedics and emergency response personnel, to ensure they did not restrain individuals like Mr. Green in the face-down position.

112.    At the time of this incident, Defendant City had no APD policy that prohibited face-down restraint or warned officers of the dangers attendant upon face-down restraint, notwithstanding well-publicized incidents of in-custody deaths from face-down restraint (such as George Floyd) and the prohibition in the MIEMSS Protocols on face-down restraint due to its risk of serious injury and death. (*See* paragraphs 4–5, *supra*.)

113.    It was only after this incident that the APD promulgated a revised use of force policy prohibiting the unconstitutional practice of face-down restraint. This prohibition was not in place at the time Mr. Green was killed.[14]

114.    This revised policy, promulgated in June 2022, reads, "Members shall not position a restrained person face-down as it may cause positional asphyxia. In addition, placing persons on their back can cause radial nerve damage to the wrist and forearm area. Restrained persons are to be seated or placed on their side."[15]

115.    This language mirrors language in the Baltimore City Police Department's Use of Force Policy (Policy 1115), promulgated well over a year earlier, on November 24, 2019.[16]

116.    This same language prohibiting face-down restraint is also found in the Pittsburgh Police Department's Use of Force Policy, promulgated nearly one year earlier than Mr. Green died, on June 9, 2020.[17]

117.    Before this incident, AFD policies did not (and have not ever) contained language similar to that now (belatedly) found in the Police Department's use of force policy.

118.    On information and belief, the AFD did not train its personnel regarding avoiding face-down restraint or promulgate a policy relevant to face-down restraint until November 1, 2022.

---

[14] *See* Use of Force Policy (March 2021), *available at* https://web.archive.org/web/20211210044717/https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF. This outdated version of the policy is still available on the City's website and represented as Police Department policy. *See* https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF.

[15] *See* https://www.annapolis.gov/DocumentCenter/View/22007/C-03-Use-Of-Force-June-2022-PDF.

[16] *See* https://www.marylandattorneygeneral.gov/Pages/IID/Reports/111822_IID_Report.pdf (page 85 of 95 of pdf file); https://public.powerdms.com/BALTIMOREMD/documents/51042.

[17] *See* https://cityofplattsburgh.com/sites/cityofplattsburgh.com/files/police-department/GO%20400%20Use%20of%20Physical%20Force%20Deadly%20Physical%20Force%20(updated%206-9-2020)_202006111145415858.pdf.

That policy (Policy 7.23, "Patient Care") does not mention face-down restraint, but simply requires paramedics to follow the MIEMSS Protocols, which, as discussed, prohibit face-down restraint.[18]

119.    Despite having actual or constructive knowledge of the obvious need to train and supervise its emergency responders in the restraint of a subject experiencing a medical emergency, Defendant City took no action to remedy its deficient training. It was instead deliberately indifferent to the rights and lives of its citizens, including Mr. Green.

120.    It was readily foreseeable and highly predictable that failing to adequately train and supervise Officer and Doe Defendants in the proper and reasonable restraint of a subject experiencing a medical emergency would (and in fact did) result in the violation of Mr. Green's constitutional rights as alleged herein, and Defendant City was deliberately indifferent to same.

121.    As alleged herein, the actions and omissions by Doe & Officer Defendants were unreasonable, excessive, absent any lawful justification and/or excuse, and were a direct result of Defendant City's failure to adequately train, re-train, supervise, and oversee its employees and/or its police officers to deal with the same. Defendant City's failure to properly train, re-train, oversee, and supervise, its employees and/or its police officers was tantamount to deliberate indifference to the constitutional rights of Mr. Green and all its citizen constituents.

122.    As a direct and proximate result of Defendant City's deliberately indifferent actions and omissions identified herein, including its unconstitutional policies or customs of permitting face-down restraint and not training its personnel to avoid face-down restraint, Mr. Green sustained injuries, including, but not limited to, fright, mental anguish, humiliation, disgrace, loss of dignity,

---

[18] *See* Policy 7.23, Patient Care, *available at* https://www.annapolis.gov/DocumentCenter/View/16634/723-Patient-Care-Response-and-Transportation-PDF.

conscious pain and suffering, and physical injury, which ultimately caused his wrongful death. Mr. Green's life and liberty were deprived summarily without due process of law.

123.    Defendant City's unconstitutional policies, customs, acts, and omissions subjected Mr. Green to these deprivations of his rights with deliberate indifference, resulting in his injuries and wrongful death.

124.    As a result of the injuries sustained by Mr. Green and his wrongful death, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, and special damages from Defendant City.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against Defendant City, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT IV

**Deprivation of Constitutional Rights (*Monell* Claim) – 42 U.S.C. § 1983 – Unconstitutional Policy or Custom/Failure to Train & Supervise**

**Wrongful Death Action
(Individual Plaintiffs Against Defendant City)**

125.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

126.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 107 through 123, *supra*, as if fully set forth herein.

127.    As a result of Mr. Green's wrongful death that was directly and proximately caused by Defendant City's unconstitutional policies and customs, and deliberately indifferent actions and/or omissions, the Individual Plaintiffs sustained injuries, including but not limited to economic

loss, mental anguish, emotional pain and suffering, anxiety, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

128.    As a result of their injuries, the Individual Plaintiffs are entitled to economic, compensatory, consequential, and special damages from Defendant City.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against Defendant City, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

### COUNT V

**Conspiracy to Deprive Constitutional Rights and/or Failure to Intervene—42 U.S.C. § 1983 and 42 U.S.C. § 1985**

**Survival Action**
**(Estate of Renardo Green Against Doe & Officer Defendants)**

129.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

130.    As alleged *supra*, Doe & Officer Defendants unlawfully and recklessly deprived Mr. Green of his rights to life, liberty, personal security, dignity, and bodily integrity, and the right to be free from physical abuse and excessive force at the hands of state actors, when they, *inter alia*, restrained Mr. Green in a face-down position to a stretcher with his hands cuffed behind his back, in contravention of clear and longstanding MIEMSS Protocols, established medical and law enforcement practice, and Mr. Green's clearly established constitutional rights.

131.    As indicated in paragraphs 36–77, *supra,* Doe & Officer Defendants were acting jointly in concert under color of state law when they recklessly violated Mr. Green's constitutional rights.

132.    Doe & Officer Defendants, by their concerted actions, conspired, confederated, and agreed to violate Mr. Green's constitutional rights through their overt acts alleged herein (i.e., restraining and strapping Mr. Green to a stretcher in a face-down position), and these overt acts were performed in furtherance of the conspiratorial objective.

133.    Doe & Officer Defendants' joint concerted overt acts caused the deprivation of Mr. Green's rights, as identified herein.

134.    In the alternative, Doe & Officer Defendants, by their concerted actions, conspired and confederated to deprive Mr. Green of his constitutional rights by acquiescing to the actions of their coconspirators by watching them openly breach the law (i.e., by strapping Mr. Green to a stretcher in a face-down position) while doing nothing to seek its prevention, and their actions were objectively unreasonable, reckless, deliberately indifferent, and shock the conscience.

135.    By their overt actions in furtherance of the conspiracy to deprive Mr. Green of his constitutional rights or by acquiescing to their coconspirators overt unlawful acts while failing to intervene, Doe & Officer Defendants shared the same conspiratorial objective.

136.    By their joint and concerted overt actions in furtherance of the conspiratorial objective and/or their acquiescence thereto, Doe & Officer Defendants are liable for the constitutional violations committed against Mr. Green.

137.    Doe & Officer Defendants had a duty to intervene when they observed their coconspirators restrain Mr. Green face-down to a stretcher in direct contravention of statewide

MIEMSS Protocols, established medical and law enforcement practice, and Mr. Green's clearly established constitutional rights enumerated *supra*.

138.    As evidenced by the fact that Doe & Officer Defendants restrained Mr. Green in a face-down position, and strapped Mr. Green to a stretcher in a face-down position in direct contravention of longstanding MIEMSS Protocols for at least <u>eleven minutes</u>, Doe & Officer Defendants had an ample and reasonable opportunity to intervene to prevent the violation of Mr. Green's constitutional rights enumerated *supra*.

139.    Despite their duty to intervene and despite being afforded a reasonable opportunity to intervene, Doe & Officer Defendants, with recklessness and deliberate indifference, declined to intervene to prevent the violation of Mr. Green's constitutional rights enumerated *supra*.

140.    Prior to June 1, 2021, Mr. Green's constitutional rights as enumerated above were clearly established, and any reasonable emergency responder or police officer knew or should have known of these rights; thus, Doe & Officer Defendants are not entitled to qualified immunity.

141.    As a direct and proximate result of the overt acts of the Doe & Officer Defendants in furtherance of the conspiratorial objective to recklessly violate, and/or their reckless failure to intervene to prevent the violation of, Mr. Green's rights as described above, Mr. Green wrongfully endured injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and physical injury. This ultimately resulted in his wrongful death.

142.    Mr. Green's life and liberty were deprived summarily without due process of law.

143.    Defendants' acts and omissions subjected Mr. Green to these deprivations of his rights with deliberate indifference, resulting in his injuries and wrongful death.

144.     As a result of the injuries sustained by Mr. Green and his wrongful death, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, special, and punitive damages from Doe & Officer Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against Doe & Officer Defendants, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT VI

**Conspiracy to Deprive Constitutional Rights and/or Failure to Intervene—42 U.S.C. § 1983 and 42 U.S.C. § 1985**

**Wrongful Death Action**
**(Estate of Renardo Green Against Doe & Officer Defendants)**

145.     Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

146.     Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 130–143 above as if fully set forth herein.

147.     As a direct and proximate result of Doe & Officer Defendants' overt acts in furtherance of the conspiratorial objective to recklessly violate and/or their failure to intervene to prevent the violation of Mr. Green's rights, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

148.     The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against Doe & Officer Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT VII

**Deprivation of Constitutional Rights – Deliberate Indifference to Serious Medical Needs – 42 U.S.C. § 1983 – Violation of Right to Due Process Pursuant to U.S. Const. Amend. XIV**

**Survival Action**
**(Estate of Renardo Green Against All Defendants)**

149.     Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

150.     The Fourteenth Amendment to the United States Constitution protects the right to be free from any deprivation of life, liberty, or property, without due process of law, at the hands of state actors, and the rights to personal security, liberty, dignity, and bodily integrity. These rights were clearly established prior to June 1, 2021, and any reasonable police officer or emergency responder knew or should have known of these rights as of that date.

151.     Section 1983 protects individuals from violations of rights protected by the United States Constitution or laws of the United States that were committed by persons acting under color of state authority.

31

152.    At all relevant times, Mr. Green was put and kept in custody in a condition of helpless peril and in a psychiatrically disabled state.

153.    Each Defendant had a duty to take reasonable steps to provide for Mr. Green's physical health and safety, including his access to appropriate medical care and treatment.

154.    Each Defendant had a duty to ensure that each and every other Defendant was not deliberately indifferent to Mr. Green's serious medical needs when they knew or should have known of those needs.

155.    Doe Defendants and Defendant City had a duty to provide timely and adequate medical care to Mr. Green, who suffered at all relevant times from a serious medical condition known to all Defendants.

156.    Officer Defendants treated Mr. Green as a combative criminal suspect instead of treating him as a person requiring immediate medical care. Officer Defendants immobilized Mr. Green on the ground, face-down, and placed his arms behind his back with two sets of handcuffs and restrained his legs with shackles. Officer Bodmer then provided Doe Defendants with a strap, which was used to restrain Mr. Green to a stretcher, and Sergeant Cochran provided Doe Defendants with an additional set of handcuffs, even after Mr. Green was already restrained in a face-down position.

157.    Officer Defendants were deliberately indifferent to Mr. Green's life and safety when they caused Mr. Green to be restrained in a face-down position and then failed to prevent and intervene when AFD Defendants transferred and then restrained Mr. Green in a face-down position to a stretcher for an extended period despite known long-standing protocols prohibiting such restraint because of its dangerous and deadly consequences, and despite obvious signs of distress from Mr. Green.

158.     As reflected by the times documented in the Officer Defendants' reports, Mr. Green had already been moved to a face-down position by 2:34 AM, when he was transferred to the stretcher, and remained restrained in that face-down position for seven (7) additional minutes, until 2:41 AM, when a paramedic reportedly turned his head. Mr. Green then remained face-down for another four (4) minutes, from 2:41 to 2:45 AM.

159.     Officer Defendants were on scene the entirety of the eleven (11) minutes that Mr. Green was immobilized in a face-down position.

160.     Officer Woytko observed Mr. Green strapped down onto a stretcher in a face-down position with handcuffs behind his back but did not intervene to prevent Doe Defendants from strapping Mr. Green down, or intervene while Mr. Green remained in that position, despite the known danger to Mr. Green's life and safety.

161.     Officer Siminyuk observed Mr. Green strapped down onto a stretcher in a face-down position with handcuffs behind his back but did not intervene to prevent Doe Defendants from strapping Mr. Green down or intervene while Mr. Green remained in that position despite the known danger to Mr. Green's life and safety.

162.     Officer Bodmer helped Doe Defendants transfer Mr. Green in a face-down position to a stretcher and handed Doe Defendants a strap, which Officer Bodmer observed Doe Defendants use to fasten Mr. Green to the stretcher while he lay face-down with handcuffs behind his back. Officer Bodner, however, did not intervene to prevent Doe Defendants from strapping Mr. Green down or intervene while Mr. Green remained in that position despite the known danger to Mr. Green's life and safety.

163.     Sergeant Cochran observed Mr. Green being strapped down onto a stretcher in a face-down position with handcuffs behind his back but did not intervene to prevent Doe

Defendants from strapping Mr. Green down or intervene while Mr. Green remained in that position. Sergeant Cochran merely handed Doe Defendants an additional set of handcuffs while Mr. Green was immobilized face-down on the stretcher despite the known danger to Mr. Green's life and safety.

164.    Officer Defendants disregarded Mr. Green's incapacitated psychiatric and emotional state by handcuffing his wrists behind his back and shackling his ankles, and then assisting or failing to intervene when Mr. Green was restrained in a face-down position on a stretcher. Under these circumstances, the prolonged and extended use of maximum physical restraint combined with assisting or failing to intervene when Mr. Green was placed in a deadly face-down position on a stretcher—in contravention of established constitutional rights and medical practice—constituted deliberate indifference to serious medical needs.

165.    Doe Defendants disregarded Mr. Green's incapacitated psychiatric and emotional state and failed to treat him as a person requiring immediate medical care. Instead of providing Mr. Green with medical assistance, Doe Defendants endangered Mr. Green's life and safety by leaving him handcuffed and shackled in a face-down position while they strapped him face down onto a stretcher, placed additional handcuffs on him, and kept him in a face-down position for eleven (11) minutes. Under these circumstances, the prolonged and extended use of maximum physical restraint, combined with adding additional restraints to Mr. Green after he was already face-down and immobilized, constituted deliberate indifference to a serious medical need.

166.    The deliberate indifference of Officer and Doe Defendants to Mr. Green's serious medical needs shocks the conscience and shows knowledge of the risk of harm and intent to act in a manner that foreseeably and substantially increased the risk of serious harm and death.

167.    Officer and Doe Defendants' deliberate indifference to Mr. Green's serious medical needs directly and proximately caused Mr. Green extreme conscious pain and suffering and severe physical injury and were a direct and proximate cause of Mr. Green's wrongful death.

168.    Defendants knowingly disregarded the real risk of serious injury to Mr. Green and were recklessly, callously, and deliberately indifferent to his constitutional rights.

169.    Defendants' deliberate indifference to Mr. Green's serious medical needs flowed from the Defendant City's unconstitutional customs or polices to permit face-down restraint and to not train officers and first responders to studiously avoid face-down restraint of individuals in the same or similar circumstances as Mr. Green, as noted above.

170.    As a direct and proximate result of Doe & Officer Defendants overt actions in furtherance of the conspiratorial objective to recklessly violate, and/or their reckless failure to intervene to prevent the violation of, Mr. Green's rights as described *supra,* Mr. Green wrongfully endured injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and physical injury, which ultimately resulted in his wrongful death.

171.    Mr. Green's life and liberty were deprived summarily without due process of law.

172.    Defendants' acts and omissions subjected Mr. Green to these deprivations of his rights with deliberate indifference, resulting in his injuries and wrongful death.

173.    As a result of the injuries sustained by Mr. Green and his wrongful death, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, and special damages from Defendants, as well as punitive damages from Doe & Officer Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages,

specific amount to be determined at trial, plus costs and interest, punitive damages against Officer

and Doe Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such

relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT VIII

**Deprivation of Constitutional Rights – Deliberate Indifference to Serious Medical Needs –
42 U.S.C. § 1983 – Violation of Right to Due Process Pursuant to U.S. Const. Amend. XIV**

**Wrongful Death Action
(Individual Plaintiffs Against All Defendants)**

174.    Plaintiffs incorporate by reference and adopt each and every allegation contained

in paragraphs 1 through 86 above as if fully set forth herein.

175.    Plaintiffs also incorporate by reference and adopt each and every allegation

contained in paragraphs 150–172 above as if fully set forth herein.

176.    As a direct and proximate result of Defendants' deliberate indifference to Mr.

Green's serious medical needs, which caused his unlawful killing, the Individual Plaintiffs

sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or

consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice,

loss of counsel, loss of training, loss of guidance, and loss of education.

177.    The Individual Plaintiffs were and will continue to be severely and irreparably

damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual

Plaintiffs are entitled to compensatory, consequential, and special damages from Defendants as

well as punitive damages from Doe & Officer Defendants.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against

Defendants, jointly and severally, in in a sum in excess of $75,000.00 in compensatory damages,

specific amount to be determined at trial, plus costs and interest, punitive damages against Officer

and Doe Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT IX

**Maryland Declaration of Rights Article 24: Deprivation of Liberty,
Excessive Force & Homicide**

**Survival Action
(Plaintiff Estate of Renardo Green Against All Defendants)**

178.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

179.    At all times relevant to this Complaint, Doe & Officer Defendants were acting under color of state law as officials employed by Defendant City.

180.    At all times relevant to this Complaint, Mr. Green had a protected civil right to liberty, life, and due process under Maryland state law as set forth in Article 24 of the Maryland Declaration of Rights.

181.    By their actions enumerated *supra*, Doe & Officer Defendants deprived Mr. Green of his civil rights to life, liberty, and due process and afforded Mr. Green far less process that he was due.

182.    Doe & Officer Defendants used excessive and unreasonable force against Mr. Green based on the totality of the circumstances then presented when they strapped Mr. Green to the stretcher face down.

183.    Doe & Officer Defendants used force that was purposeful, excessive, objectively unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful, in restraining Mr. Green on the stretcher in a face-down position.

184.     Doe & Officer Defendants engaged in purposeful acts of misconduct, including excessive force, even though they knew that valuable and specific procedural safeguards were in place to protect Mr. Green's protected right to life, liberty, and due process.

185.     No government interest or burden outweighed Mr. Green's enumerated and/or clearly established rights.

186.     Doe & Officer Defendants' conduct was without excuse or legal justification and was improperly motivated by recklessness and deliberate indifference to the rights of Mr. Green. Defendants intended, with excessive force and without probable cause, to cause Mr. Green to be strapped to the stretcher in a face-down position.

187.     Mr. Green did not have the freedom to leave during his detention and seizure.

188.     Doe & Officer Defendants' conduct was objectively unreasonable considering the facts and circumstances then confronting them.

189.     Defendant City is vicariously liable to Plaintiffs for Doe & Officer Defendants' deprivation of Mr. Green's rights under Article 24 of the Maryland Declaration of Rights.

190.     Doe & Officer Defendants' actions or omissions as described herein were intentional, wanton, willful, and manifested blatant and reckless disregard for Mr. Green's constitutionally protected rights.

191.     As a direct and proximate result of Defendants' actions and omissions identified herein, Mr. Green suffered injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and wrongful death. Mr. Green's liberty was summarily deprived by Defendants without the judgment of his peers or by the law of the land.

192.    As a result of the injuries sustained by Mr. Green, Plaintiff Estate of Renardo Green is entitled to compensatory, special, and punitive damages from Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and Doe Defendants, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT X

**Maryland Declaration of Rights Article 24: Deprivation of Liberty,
Excessive Force & Homicide**

**Wrongful Death Action
(Individual Plaintiffs Against All Defendants)**

193.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

194.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 179–190.

195.    As a direct and proximate result of Defendants' violations of Mr. Green's rights under Article 24 of the Maryland Declaration of Rights, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

196.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and Doe Defendants, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

**COUNT XI**

**Assault and Battery**

**Survival Action**
**(Plaintiff Estate of Renardo Green Against Officer and Doe Defendants)**

197.     Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

198.     At all times relevant to this Complaint, Officer and Doe Defendants were acting under color of state law as officers employed by Defendant City.

199.     Defendants assaulted and battered Mr. Green when they unlawfully restrained Mr. Green in a face-down position and unlawfully strapped him in a face-down position to a stretcher.

200.     Defendant actions raised in Mr. Green's mind an apprehension of imminent bodily harm when they unlawfully restrained Mr. Green in a face-down position and unlawfully strapped him in a face-down position to a stretcher.

201.     Defendants intentionally touched Mr. Green in a harmful or offensive manner when they strapped him in a face-down position to the stretcher. Mr. Green did not give Defendants permission to touch him in that or any other manner.

202.     Defendants' conduct was without legal justification and was purposeful. Defendants acted as Defendant City's agents, servants, and/or employees when they assaulted and battered Mr. Green.

203.    Defendants' conduct was committed within the scope of their employment with Defendant City; thus, Defendant City is vicariously liable for the Doe Defendants' and Officer Defendants' tortious acts and omissions with respect to Mr. Green.

204.    As a direct and proximate result of these acts, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and Doe Defendants, and any other such relief that this Court deems just and proper and further relief as the nature of the case may require.

## COUNT XII

**Assault and Battery**

**Wrongful Death Action**
**(Individual Plaintiffs Against All Defendants)**

205.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

206.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 198–203 above.

207.    As a direct and proximate result of Defendants' assault and battery against Mr. Green, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

208.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XIII

### Negligence

### Survival Action
### (Estate of Renardo Green Against All Defendants)

209.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

210.    At all times relevant to this Complaint Defendants were acting under color of state law.

211.    Defendants undertook and otherwise owed Mr. Green a duty to exercise due care to avoid causing foreseeable physical or mental injuries to him.

212.    Defendants breached their duty to Mr. Green by their actions and inactions noted throughout this Complaint, including those enumerated in paragraphs 1–86, *supra*.

213.    Defendants' negligence proximately caused the injuries that Mr. Green sustained. All of Mr. Green's injuries were caused solely by the negligence of Defendants without any contributory negligence by Mr. Green.

214.    As a result of these acts, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Doe and Officer Defendants, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XIV

### Negligence

### Wrongful Death Action
### (Individual Plaintiffs Against All Defendants)

215.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

216.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 210–213 above as if fully set forth herein.

217.    As a direct and proximate result of Defendants' negligence with respect to Mr. Green, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

218.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

43

WHEREFORE, the Individual Plaintiffs demand judgment in each of their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and Doe Defendants, and any other such relief that this Court deems just and proper and further relief as the nature of the case may require.

## COUNT XV

### Gross Negligence

### Survival Action
### (Plaintiff Estate of Renardo Green Against All Defendants)

219.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

220.    At all times relevant, Defendants were acting under color of state law.

221.    By their conduct toward Mr. Green, enumerated *supra*, Defendants engaged in intentional, willful, and wanton misconduct with reckless disregard for the consequences to Mr. Green.

222.    Defendants' gross negligence proximately caused the injuries that Mr. Green sustained. All of Mr. Green's injuries were caused solely by the gross negligence of Defendants without any contributory negligence by Mr. Green.

223.    Defendants' conduct was without legal justification and was improperly motivated by a reckless disregard for the consequences to Mr. Green.

224.    Officer and Doe Defendants' conduct was committed within the scope of their employment with Defendant City; thus, Defendant City is vicariously liable for their tortious actions committed against Mr. Green.

225.    As a result of these unlawful acts, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Doe and Officer Defendants, any other such relief that this Court deems just and proper and further relief as the nature of the case may require.

## COUNT XVI

### Gross Negligence

### Wrongful Death Action
### (Individual Plaintiffs Against All Defendants)

226.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

227.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 220–225 above as if fully set forth herein.

228.    As a direct and proximate result of Defendants' gross negligence with respect to Mr. Green, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

229.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs request that this Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XVII

### Negligent Hiring, Training, Retention, and Supervision

### Survival Action
### (Plaintiff Estate of Renardo Green Against Defendant City)

230.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

231.    At all times relevant to this Complaint, Defendants were acting under color of state law.

232.    Defendant City undertook or otherwise owed a duty to use reasonable care in hiring, training, and supervising individuals competent and fit to perform the duties of a police officer and of paramedics and other emergency services personnel employed by the AFD.

233.    Defendant City knew or should have known that Officer and Doe Defendants proved unfit for their assigned duties. Defendant City is obligated to adequately train and supervise its police officers and fire department personnel in the recognition and lawful handling of incidents involving the assistance and/or the restraint of individuals suffering from a disturbed and/or impaired mental state.

234.    At all relevant times, Defendant City, directly and through its officers and agents had a duty to ensure that its officers, employees, and agents, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the

training, supervision, and oversight of all employees, agents, and officers under its direction and control.

235.   As identified *supra*, Officer and Doe Defendants' used excessive force and deprived Mr. Green of his civil rights by restraining him in a face-down position to the stretcher against known statewide protocols, established medical and law enforcement practice, and clearly established constitutional rights.

236.   Defendant City knew or should have known that Officer and Doe Defendants were incompetent to provide emergency medical services to individuals suffering from a disturbed and/or impaired mental state at the time they encountered Mr. Green on June 1, 2021.

237.   As identified *supra*, the training, supervision, and oversight required to be provided by Defendant City to Officer and Doe Defendants regarding the assistance and/or the restraint of individuals suffering from a disturbed and/or impaired mental state were inadequate, insufficient, or nonexistent. Defendant City, directly and through its employees, agents, and officers, failed to exercise the requisite degree of care in the training, supervision, and oversight of Officer and Doe Defendants.

238.   Defendant City knew or should have known it condoned face-down restraint—and did not adequately train, supervise, or monitor its employees to prevent face-down restraint—all of which posed an unreasonable risk of injury, permanent injury, and death to individuals under the same or similar circumstances as Mr. Green.

239.   Despite this knowledge, Defendant City took no adequate action to prevent or remedy its failure to meet its duty of care to Mr. Green. Defendant City knew, should have known, or was deliberately indifferent to the reasonably foreseeable, deadly consequences that its failures would likely cause and did cause for Mr. Green.

240.    Defendant City knew or should have known that it was almost certain that Officer and Doe Defendants would come into contact with individuals similar to Mr. Green who were suffering from a disturbed and/or impaired mental state. By virtue of Defendant City's negligent hiring, training, retention, and supervision, the risk that Officer and Doe Defendants would violate the constitutional rights of Mr. Green and kill him was readily foreseeable.

241.    Defendant City failed to adequately supervise Officer and Doe Defendants and other employees in the proper handling of incidents of assisting and/or restraining individuals suffering from a disturbed and/or impaired mental state.

242.    It was readily foreseeable to Defendant City that failing to properly train, supervise, and monitor Officer and Doe Defendants in the proper handling of incidents involving the assistance and/or the restraint of individuals suffering from a disturbed and/or impaired mental state would, and in fact did, result in the violation of Mr. Green's constitutional rights as alleged herein, and Defendant City was indifferent to same.

243.    As a direct and proximate result of Defendants' actions and/or omissions identified herein, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

244.    Defendant City subjected Mr. Green to these deprivations of his rights with reckless disregard for or with deliberate indifference to whether Mr. Green's rights would be violated. Defendant City's actions and/or omissions as described *supra* directly and proximately caused Mr. Green to be deprived of his constitutional rights and be wrongly killed.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendant City in an amount in excess of $75,000.00 in compensatory damages, specific

amount to be determined at trial, plus costs and interest, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XVIII

### Negligent Hiring, Training, Retention, and Supervision

### Wrongful Death Action
### (Individual Plaintiffs Against Defendant City)

245.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

246.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 231–244 as if fully set forth herein.

247.    As a direct and proximate result of Defendants' negligent hiring, training, retention, and supervision with respect to the Officer and Doe Defendants, who caused Mr. Green's unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

248.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, and special damages.

WHEREFORE, the Individual Plaintiffs request that this Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XIX

**Wrongful Death**
**(Individual Plaintiffs against All Defendants)**

249.     Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

250.     Plaintiffs Brittany Green, Tiffany Green, Jayda Green, Phyllis McGowan, and Tracy Naylor are primary beneficiaries in this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904. They have brought this action within the appropriate time limits set forth in the Maryland Wrongful Death Act.

251.     Defendants, as a direct and proximate result of their acts and/or omissions enumerated *supra* (including but not limited to those pled in in paragraphs 1 through 86), wrongfully killed Mr. Green when they strapped him to the stretcher in a face-down position against the MIEMSS Protocols, established medical and law enforcement practice, and Mr. Green's clearly established constitutional rights on June 1, 2021.

252.     Mr. Green had done nothing to warrant the use of deadly force, and there was no legal justification for Defendants to use such force. Defendants acted with negligence, gross negligence, recklessness, and deliberate indifference to Mr. Green's rights.

253.     Each and every Defendant, individually or through their agents, servants, or employees, was directly and proximately responsible for the homicide of Mr. Green. His death was caused by the actions of the Defendants without any wrongdoing by Mr. Green.

254.     In committing the foregoing acts, Defendants were acting in their official capacity and within the scope of their employment.

255.     As a direct and proximate result of Defendants' actions and/or omissions, Plaintiffs Brittany Green, Tiffany Green, Jayda Green, Phyllis McGowan, and Tracy Naylor sustained

pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

WHEREFORE, the Individual Plaintiffs demand judgment in each of their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus punitive damages against Officer and Doe Defendants, costs and interest, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

### COUNT XX

**Survival Action**
**(Plaintiff Estate of Renardo Green Against All Defendants)**

256.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

257.    At all times relevant to the allegations herein, Defendants undertook or otherwise owed Mr. Green a duty to use reasonable care.

258.    By each of their acts and omissions enumerated *supra*, Defendants negligently failed to meet their duty of care to Mr. Green and wrongfully killed him when they restrained him on the ground in a face-down position, and strapped him to a stretcher in a face-down position, against the MIEMSS Protocols, established medical and law enforcement practice, and Mr. Green's clearly established constitutional rights, on June 1, 2021.

259.    Mr. Green had done nothing to deserve the use of deadly force, and there was no legal justification for Defendants to use such force. Defendants acted with recklessness and deliberate indifference to Mr. Green's rights.

260.    Each of the Defendants, individually or vicariously through its agents, servants, or employees, was directly and proximately responsible for the homicide of Mr. Green, and his death was caused by the actions of the Defendants without any wrongdoing by Mr. Green.

261.    In committing the foregoing acts, Defendants were acting in their official capacity and within the scope of their employment.

262.    As a direct and proximate result of Defendants' actions or omissions identified herein, Mr. Green sustained injuries, including, but not limited to, fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering; and then he died. Mr. Green's liberty was summarily deprived by Defendants without the judgment of his peers or by the law of the land.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus punitive damages against Officer and Doe Defendants, costs and interest, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## **REQUEST FOR RELIEF**

**WHEREFORE**, as to each and every count pled, Plaintiffs respectfully request that this Court award them:

A.  Judgment in favor of each Plaintiff and against Defendants, individually and/or jointly and severally, finding Defendants liable to Plaintiffs;

B.  Compensatory damages in an amount of at least $75,000,000.00 (Seventy-Five Million Dollars);

C.  Reimbursement of all costs paid by each Plaintiff or on behalf of each Plaintiff in connection with the incident in an amount to be determined at trial;

D.  Costs and expenses of this case, including attorneys' fees;

E.  Pre-judgment and post-judgment interest;

F.  Punitive damages against Officer and Doe Defendants, in an amount to be determined at trial;

G.  Injunctive relief, including but not limited to mandatory training and re-training of City personnel in the proper care of individuals under the same or similar circumstances as Mr. Green, to prevent what befell him from happening to other Annapolis residents and visitors; and

H.  Any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

Dated: December 13, 2022                   Respectfully submitted,

                                           By: */s/ Patrick A. Thronson*
                                           Patrick A. Thronson (Bar #18906)
                                           Brenda A. Harkavy (*pro hac vice to be applied for*)
                                           JANET, JANET & SUGGS, LLC
                                           Executive Centre at Hooks Lane
                                           4 Reservoir Circle, Suite 200
                                           Baltimore, MD 21208
                                           Telephone: (410) 653-3200
                                           Facsimile: (410) 653-9030
                                           Email: pthronson@jjsjustice.com
                                           Email: bharkavy@jjsjustice.com
                                           *Attorneys for Plaintiffs Tracy Naylor and Estate of Renardo Green*

                                           */s/ Malcolm P. Ruff (with permission)*
                                           William H. Murphy, Jr. (Bar # 07985)
                                           Malcolm P. Ruff (Bar # 21595)
                                           MURPHY, FALCON & MURPHY
                                           One South Street, 30th Floor
                                           Baltimore, MD 21202

Telephone: (410) 951-8744
Facsimile: (410) 539-6599
Email: billy.murphy@murphyfalcon.com
Email: malcolm.ruff@murphyfalcon.com
*Attorneys for Plaintiffs Brittany Green, Tiffany Green, Jayda Green, and Estate of Renardo Green*

*/s/ Dwayne A. Brown (with permission)*
Dwayne A. Brown (Bar #04724)
LAW OFFICE OF DWAYNE A. BROWN
20 South Charles Street, Suite 400
Baltimore, Maryland 21201
Telephone: (410) 539-6855
Email: dbrown@brownbonner.com
*Attorneys for Plaintiffs Phyllis McGowan and Estate of Renardo Green*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action and issues set forth in this Complaint that are so triable.

*/s/ Patrick A. Thronson*
Patrick A. Thronson (Bar #18906)

*/s/ Malcolm P. Ruff (with permission)*
Malcolm P. Ruff (Bar # 21595)

*/s/ Dwayne A. Brown (with permission)*
Dwayne A. Brown (Bar #04724)